District Court. Thank you, Your Honor. Honorable Justices of the Court of Appeals, counsel, may it please the Court. Happy to be here today on behalf of Justin Izatt, my client who is pleased to have this opportunity as well. Mr. Izatt was convicted in the United States District Court of possession of methamphetamine with intent to deliver and was subsequently sentenced based on sentencing enhancements to life in prison without the possibility of parole. At the time, Mr. Izatt was represented by different counsel and he filed a 2255 petition for alleging ineffective assistance of counsel against his trial attorneys. In his petition for post-conviction relief, or his 2255 petition, Mr. Izatt raised a number of claims. The main claims that he made are errors made by counsel during the course of the trial in regards to a particular witness in the handling of evidence regarding that witness. Her name was Mariah Pace. He also raised the issue of counsel making a false and unfulfilled promise to the jury. He raised the issue of a waiver of speedy trial without his permission or without discussion with him. At least at the entry level, he raised the issue of the District Court failing to grant him an evidentiary hearing on his 2255 claims. Could I ask you a question, please? So what prejudice did he allege on his speedy trial claim? Are there any witnesses who passed away or evidence that was lost that was alleged? There were no instances like that, Your Honor. There was no particular loss of the ability to present his case. He did, as I discussed in my briefs, he lost the ability to challenge for a potential dismissal under Strunk and under Barker v. Wingo on the speedy trial issue. What would have been the basis for a dismissal if the lawyer had not requested continuances, had the government asked for continuances, that violated his speedy trial, right? Both parties did request continuances. So the government requested one and then there was a stipulated one by both parties and then there were a couple by his counsel. Is that my – that was my recollection, right? That's correct, Your Honor. And then – So what would have been the basis for a dismissal? And let me add, finally, there was a final one, too, a final request that happened just on the eve of trial. The emergency medical one. Medical emergency. And that's not – we're not raising that as a – that's not the one that we're talking about or mentioning. So I think the basis would be that there's simply a violation of the Speedy Trial Act and then – What was the violation? That his case would not have been brought to trial within a reasonable period of time. If what? If the lawyer had not asked for continuances? If the continuances had not been requested and granted. So under Strickland, we're supposed to say if but for his deficient actions, and the deficient actions here in your view was asking for a continuance. Asking for a continuance. Is that – you're saying that the deficient actions of his attorney was asking for a continuance? Not exactly. What I would say is that the deficient action of counsel was requesting a continuance without – counsel has a duty to convey information under Strickland, a duty to confer with his client regarding important decisions, to discuss those important decisions and make them together with his client. And there's no evidence that he did that. And interestingly, the government in their response submitted not one but two affidavits from counsel talking about his representation and talking about the speedy trial issue. But in neither of those affidavits did counsel say, oh, I did discuss this with Justin. I did talk to him about it. I went ahead and waived his constitutional rights based on an agreement between us. He never said that. There was no discussion. So are you talking about constitutional rights or the Speedy Trial Act? Well, certainly they – claims can be brought under either. If you're alleging a speedy trial violation, they could bring it under the Speedy Trial Act or as a constitutional violation. But we've said like in 8 months, as long as it goes to trial within 8 months, there's no threshold for the constitutional violation. And this case I think went to trial in 7 months. Is that – that's my – what my notes say. I believe that's – yeah, just over 7 months was the timeframe. Okay. I'm still not sure how he was prejudiced by the delays. Well, I think the prejudice is that Mr. Isaac sacrifices the ability to – a challenge for a dismissal. I mean, that's the remedy under Strunk. So if he had – if the lawyer had asked him, are you saying that Mr. Isaac would have said no, no continuance to review the new information? Is there any evidence to that effect? Because the continuances asked for by Mr. Isaac's lawyer were to review new information so that the lawyer would have time to get up to speed. That's what the district court said in its orders. So are you saying that had he been consulted, Mr. Isaac would have said no? Mr. Isaac, in his affidavit, that's what he indicated. He indicated in his sworn affidavit that he would not have – If he had said no, then the continuances would not have been requested. And so there would have been no delay of the trial. Correct. So now we have to say why was he prejudiced by the delay of the trial? He obviously didn't lose his right to contest a violation of the Speedy Trial Act, because by your hypothetical, if he said no and there was no delay of the trial, then there wouldn't have been any basis for a Speedy Trial Act violation or request for a dismissal. I'm sorry. I'm not following. He can't be prejudiced by not being able to argue for a dismissal on a violation of the Speedy Trial Act if his theory is, had he been consulted, there would have been no continuances. Right. And I think the – So we have to look for some other prejudice. I think the potential prejudice to Mr. Isaac is that he loses the right to challenge the violation of the Speedy Trial Act. I go back to Judge Gould's first question, which is, was there any prejudice from a longer trial? And the only thing I hear you say is a longer delay until the trial commenced. And what I'm hearing you say is there wasn't, other than had there been some violation of the Speedy Trial Act, he could have challenged the violation of the Speedy Trial Act. I think there's also prejudice in that Mr. Isaac was incarcerated during the entire pendency of the case. And so there's the loss of liberty that results as well. I mean, he's in custody, so each day that his case drags on is another impingement on his freedom. Counsel, did you want to reserve some time for a rebuttal argument? You know, we set this for a very short period of argument, so we'll give you an extra few minutes. Thank you. Thank you, Your Honor. I did want to raise one more issue before I – my time is running short. I'll try not to talk too fast. Well, I figure we'll add three minutes to your clock. Thank you. We'll give your friend another three minutes, too. Thank you. One of the issues that we raised on post-conviction has to do with this handling of the testimony and evidence regarding a witness, Mariah Pace, which was a real curveball in the trial. Counsel, to his credit, admitted that he made mistakes regarding the handling of that witness. She was – she came in, she was granted immunity by the government. That came as a surprise to everyone. And counsel did not make any efforts at that point in time to try to find out what was going on. He didn't investigate. He didn't try to interview her. He didn't request a continuance. He didn't request – make a supplemental discovery request of any type. Really made no effort to investigate. Our argument is that in doing so, he was not able to verify or bolster the information that she was going to provide in her confession, which was the drugs were mine, not Justin Isaacs. I've been living here. The drugs are mine. A huge moment in the trial. She argued that she got them under the permission of Mr. Ayers, isn't that correct? When she testified, that was her testimony, Judge. And so one question I had was what – there wasn't any presentation in your briefing as to what evidence would have been raised had he had enough time to – had he asked for a continuance and had enough time to investigate. Well, the evidence – we did provide a little bit of evidence in that Mr. Ayers, it was subsequently determined, was in fact convicted in United States court for distributing methamphetamine. I thought the testimony was that he was in prison at the time on a drug charge, and that was how – that was why he allowed her just to go to pick up drugs that were stored in his shed. The testimony at trial, that is correct. So the fact that he was convicted of a drug crime wasn't anything really new? Well, I think it would have bolstered the idea that he was the source of – he could have very well been the source of drugs for Ms. Pace. Was there any evidence that he – did he present an affidavit that he had agreed to this arrangement where he would just leave drugs in the shed behind his house and she could come pick them up when he wanted – when she wanted? There was no evidence of that. I just want to finish quickly on this point. They really had no idea what the government would say or present and didn't take the steps to get informed, and as a result they were not prepared for the aftermath, which was her story sort of fell apart on cross-examination based on the information the government had obtained and went out and investigated that evening. It changed the complexion of the trial, and the prejudice was that they really lost the probative value of significant evidence and its impact on the jury, potentially exculpatory evidence that, if believed, would have at very least created reasonable doubt and potentially changed the outcome of the trial. So I think that's an important point as well. Mr. Wiggins, would you like to hold some time for rebuttal? Yes, please. Thank you. You've got them. We'll give you one extra minute more so you can plan your time. May it please the Court. Christian Nasker on behalf of the United States. The defendant has not met his burden to show that one of his two retained counsels' representation fell below an objective standard of reasonableness, nor has he shown that one of his counsel's deficient performance prejudiced him. I'm going to start with Ms. Pace's testimony. Counsel today is suggesting that Mr. Nelson was deficient in his handling of Ms. Pace, but it's important to note that Mr. Izett had retained two private counsel, Mr. Gatewood and Mr. Nelson. Mr. Gatewood was the individual who directly examined Ms. Pace, and so to suggest that Mr. Nelson was deficient ignores that fact that that was not his witness. There is nothing in the record to suggest that Mr. Gatewood did not spend, whether he spent any time with Ms. Pace the evening after she was granted immunity or the morning before he called her as a witness. What is in the record is that Mr. Nelson, in his affidavit, stated that he spent in excess of 10 hours preparing Ms. Pace for trial and decided that she would be a poor choice, and it was only when Mr. Izett demanded that he call or that they call Ms. Pace as a witness that Mr. Gatewood ended up doing the direct examination. So I believe that he fails to show any deficiency from Mr. Nelson or any prejudice on that issue. Mr. Nelson falls on his sword, though, and says, oh, it was a huge mistake not to get a continuance, and that deprived Mr. Izett of a fair trial. Well, he conveniently left out that that was not his witness. There was no discussion about what Mr. Gatewood did or did not do to prepare, to examine, to question the witness that he called at this trial, and I think that's telling. As to the speedy trial issue, the defendant cites excerpts of Record 122 to suggest, I believe after the fact, that he's really challenging all the various continuances or stipulations that occurred in this case. The problem with that is that Mr. Izett's affidavit, the only support that Mr. Nelson failed to consult with his client on a continuance has to do with a single continuance that's noted on ER 122. And while I'll grant that he doesn't specifically give a date of what continuance we're talking about, I think it's fair to assume with the totality of the circumstances that he's referring to an instance in where Mr. Nelson didn't ask him beforehand whether he would agree to a continuance and that he didn't learn about it until after it occurred. And Mr. Nelson, in response to that, explained the medical emergency that happened three days before trial. And so it was only in the reply brief, to cite to no support, that Mr. Nelson didn't consult with Mr. Izett. And just a minute ago, defense counsel said there's no evidence that he consulted with his client on the continuances that occurred before the medical situation. But it's his burden to show that Mr. Nelson was deficient. And there's nothing in this record to suggest that Mr. Nelson failed to consult with Mr. Izett on the prior continuances that occurred after a superseding indictment, or a superseding, I'm sorry, yes, a superseding indictment. And so I believe he's met neither prong of Strickland on that matter. Counsel, could I ask you a question, please? If we assume that the court decided that the appellant should be able to challenge the whole series of continuances, would a hearing be necessary on deficiency and on prejudice? I believe that he would need to put something in the record to suggest and I'm only addressing the alleged deficiency in that he failed to consult with his client before agreeing or seeking a continuance. And what the district court had before it was a single instance that Mr. Izett complained of that married up to the medical emergency. And so absent any support or any allegation, there's no need for the district court to have an evidentiary hearing on an allegation that wasn't contained in the 2255 petition or supported by any affidavits. Okay, thank you. Obviously there are other seven different allegations here. If you don't have any questions for me, I'm happy to be done. If you have any questions as to the other five issues that haven't previously been discussed, I'm happy to answer those as well. But shouldn't we be giving Mr. Izett the benefit of the doubt here? Because if you look at the petition and the memorandum and affidavit, it all speaks in sort of general terms about continuances and not consulting with him rather than just limit this to the medical emergency issue. Well, I would respectfully disagree. Nothing discusses continuances plural. Mr. Izett's affidavit refers to one continuance. In the 2255 petition, counsel refers to a single continuance. And so absent any support for what resulted in a relatively short delay and considering the fact that no prejudice can be shown, I don't believe that's necessary. Would it not have been a better practice to have an evidentiary hearing to get to the bottom of that issue? Well, the district court was in a unique position in that he could supplement the record given the fact that he presided over this trial, could observe firsthand both of the defendant's counsels. He had the opportunity to read an affidavit from Mr. Izett's counsel, Mr. Nelson, and look at all the affidavits in relation to what he observed firsthand. And so no, I believe that the court did not abuse its discretion in denying the petition without an evidentiary hearing. Thank you, counsel. Thank you. If you needed more time, we would have given it to you. Glad you didn't. Thank you. It looks like I have about a minute and 45 seconds. I just wanted to touch on a couple things real quick. Whether I use the word continuance or continuances, there was requests for continuances made by his counsel, by Izett's counsel, without consulting with him, according to any of the evidence presented, even counsel's own affidavits. And so I don't think it's splitting hairs, or I think it is splitting hairs, I should say, to say he was talking about a particular, we were talking about a particular continuance. This happened throughout the case on three different occasions, as we discussed, not including the medical one, and we didn't raise anything about the medical one. One other matter that I want to touch on real quick. Mr. Izett, his counsel made an indication to the jury, a false promise to the jury, that Mr. Izett would testify, and would testify. And under the Sacy v. McDonald case from the Ninth Circuit in 2013, it talks about that this is evidence of a deficient performance by counsel, if it's an actual promise, not just a suggestion, and not merely an expression of hope, but if it's a promise to the jury. And the reasoning that they gave was that if there's a promise, and that promise is reneged upon, common sense indicates that the course of the trial could be profoundly altered, because a broken promise of this magnitude sort of taints the proceedings. It gives a negative inference to the jury, whose impression is fragile, as stated by the Sacy court. And when the promised witness never takes a stand, the jurors are left to wonder why. They'll naturally speculate, leaves a gaping hole in the defense theory. Having waited vigilantly for the promised testimony, counting on it to verify the defense theory, the juror may resolve his confusion through negative inference. In addition to doubting the defense theory, the juror may also doubt the credibility of counsel. Did Mr. Nelson mention that later in the trial, say in his closing argument, try to explain why Mr. Izzett didn't testify? I think he made, if I recall, he made a statement in closing that trials are a revolving thing, but he did not, I mean, there was no discussion in closing of why. Given the fact that the witness favorable to him had surfaced, Pace was going to say that she got the drugs from someone else. Couldn't counsel make a decision not to call him? I think that, I don't think that the choice of Mr. Izzett then was to not necessarily have Mr. Izzett testify after he had promised the jury that he would. I think Mr. Izzett still could have testified and said the drugs aren't mine. He was going to say that either way, the drugs aren't mine. There was additional evidence before the court at that point in time by way of the testimony. Okay, well, thank you, and you're over your extended time. I appreciate the opportunity to be here, and I appreciate on behalf of Justin Izzett to be here as well. Thank you. Thank you very much. I want to thank both counsel for the excellent arguments. I also want to give you an extra thanks to both of you for traveling all the way from Boise to help us out today. So thanks. Thank you.
judges: Gould, Ikuta, Tunheim